J-A10022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NOVA HOME HEALTH CARE, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PETER KOUTROULIS, UNITED | : | |
| HEALTH CARE, LLC, JOHN/JANE DOE | : | |
| 1, AND JOHN/JANE DOE 2 | : | No. 2610 EDA 2017 |

Appeal from the Order Entered July 24, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): July Term, 2016 No. 0709

BEFORE:    GANTMAN, P.J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED JUNE 07, 2018**

Appellant, Peter Koutroulis, appeals from the order granting the petition of Appellee, Nova Home Health Care, Inc. ("Nova"), to enforce a settlement agreement. Nova sued Koutroulis in tort alleging that while he was president of Nova, Koutroulis surreptitiously started a competing business. The parties engaged in settlement discussions that included a telephone conversation. Koutroulis frames the issue in this appeal as, "Did this telephone conversation create a binding settlement agreement?"[1] The trial judge, the Honorable Patricia A. McInerney, answered that question, "Yes." We do as well, and we affirm based on Judge McInerney's Opinion.

_____

*   Retired Senior Judge assigned to the Superior Court.

[1] Appellant's Br. at 4.

We adopt Judge McInerney's recitation of the factual and procedural history of this case. Trial Court Opinion, filed 12/15/17, at 1-8.

Koutroulis argues on appeal that the telephone conversation did not create an enforceable settlement agreement because Nova's counsel "did not unconditionally and absolutely accept" all terms of Koutroulis's counteroffer. Appellant's Br. at 13. He maintains that during the phone conversation, counsel only discussed two settlement terms and Nova's counsel did not during the call objectively manifest assent to all terms. Koutroulis also contends that his lawyer's statement that a particular term – that Nova drop a demand for indemnification in exchange for Koutroulis's agreement not to seek certain documents regarding an Attorney General investigation – was "reasonable," did not constitute acceptance of that term. Koutroulis additionally argues that the testimony of Nova's counsel that she believed that the parties had reached a settlement was not credible, when viewed in the context of two other pieces of evidence.

We apply contract law to determine the enforceability of a settlement agreement. **_Mastroni-Mucker v. Allstate Ins. Co._**, 976 A.2d 510, 517-18 (Pa.Super. 2009). Contract interpretation is a question of law, and our standard of review of questions of law is _de novo_ and our scope of review is plenary. **_Id._** We may reverse the trial court's findings of fact only if they are predicated on an error of law or are unsupported by the record. **_Id._** at 518.

None of Koutroulis's arguments has merit, and we affirm based on Judge McInerney's Opinion. Her Opinion sets forth her findings of fact that the parties

reached agreement on all material terms, one by one, over a series of discussions, with agreement on the outstanding terms occurring during the phone conversation. *See* Trial Court Opinion at 3-7. Judge McInerney specifically found as a fact that the parties agreed during the call that Nova would not require indemnification and Koutroulis would forgo his document requests. *Id.* at 5. She thus treated defense counsel's response that that term was "reasonable" as an acceptance of the term, and not a mere statement of personal opinion. Similarly, Judge McInerney stated in her Opinion that she credited the testimony of Nova's counsel and disbelieved all materially inconsistent testimony. *Id.* at 7.

Each of Koutroulis's arguments on appeal amounts to a challenge to Judge McInerney's factual findings and credibility determinations. However, Judge McInerney's findings are supported by the record and are not based on any error of law. We therefore, as our standard of review requires, affirm them and deny Koutroulis's appeal.

Finally, we deny Nova's Motion to Dismiss this appeal due to alleged deficiencies in Koutroulis's brief and in the reproduced record. Any such failings did not significantly hamper our appellate review in this case.

Order affirmed. Motion to Dismiss denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/18

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| NOVA HOME HEALTH CARE, INC., | : | **JULY TERM, 2016** |
| | : | |
| Plaintiff(s), | : | **NO. 0709** |
| | : | |
| vs. | : | **COMMERCE PROGRAM** |
| | : | |
| PETER KOUTROULIS, ET AL., | : | |
| | : | **Superior Ct. Docket No.** |
| Defendants. | : | **2610 EDA 2017** |

## OPINION

BY:   Patricia A. McInerney, J.                                          December 14, 2017

### I.   BACKGROUND

On July 11, 2016, Nova Home Health Care, Inc. ("Nova" or "Plaintiff") commenced the

above-captioned action by way of a complaint against Peter Koutroulis ("Koutroulis" or

"Defendant") and United Home Health Care, LLC. In the complaint, Plaintiff averred

"Mohamed Abdi founded Nova in 2012 to provide home health care services to residents of

Philadelphia County." (Compl. ¶ 6). The complaint further averred "Koutroulis accepted [a]

position with Nova on or about May of 2013" and "[i]n 2013, Mr. Abdi and … Koutroulis

invested capital into Nova and in return received 60% and 40% of the shares of Nova,

respectively." (Id. at ¶¶ 12, 15).

Then, according to the complaint, "[i]n early January 2016, a Nova employee informed

Mr. Abdi that … Koutroulis was frequently not present at Nova and had started a business in

direct competition with Nova." (Id. at ¶ 17). "Mr. Abdi subsequently learned that while

employed by Nova, … Koutroulis and his wife, Antigone Polites, organized United Home Health

1

Nova Home Health Care, Inc. Vs Koutroulis Et-OPFLD



1607007090086

COPIES SENT PURSUANT TO Pa.R.C.P. 236(b)  D. KELLY  12/15/2017

Care, LLC in December 2014, providing competing services to the same population in the same geographic region as Nova[,]" according to the complaint. (Id. at ¶ 18).

Nova asserted a number of causes of action against Koutroulis, including for conversion of $45,000 from Nova's operating account and breach of the duty of loyalty for failing to act in good faith solely for Nova's benefit in all matters for which he was employed. Nova also asserted a number of causes of action against Koutroulis and United Home Health Care, LLC, including for unfair competition and employee raiding.

On April 19, 2017, Plaintiff filed a petition to enforce a settlement agreement it said had been reached between Plaintiff and Defendant (collectively, "the Parties.") Therein, Plaintiff asserted the following:

> On March 7, 2017, counsel for the parties started settlement discussions orally. On March 23, counsel for Nova issued a written offer via email to Defense counsel containing ten (10) material terms. Via email dated March 29, Defense counsel accepted nine (9) of the terms and rejected one (1). Defense counsel also added an additional term in the March 29 email. Counsel mutually agreed via telephone to remove the one term objectionable to Defendant in exchange for also removing the additional term in the March 29 email. By email dated April 7, 2017, Plaintiff's counsel confirmed the agreement on the current terms, leaving open only the proposed date of one term. There were no further communications.

> On April 1[4], 2017, Koutroulis hired new counsel, Joseph Cronin, who entered his appearance with the Court. On April 18, 2017, Mr. Cronin contacted Defense counsel via cell phone and indicated that Koutroulis would not honor the settlement agreement entered into with prior counsel. Instead, Mr. Cronin indicated he would issue new discovery requests, and subpoenas as well seek additional depositions.

> ***

> In the matter before this Honorable Court, the parties entered into an enforceable agreement to settle and had assented to all material terms. Nova's counsel extended an offer to settle in the March 23rd email. Koutroulis' acceptance created a legally binding agreement. The offer and acceptance were supported by consideration of a confidential amount. The parties agreed on all essential terms. The only detail the parties left open was the date that would be used for one of the confidential settlement transactions. Although the parties intended to reduce the agreement to a formal writing at a later date, the agreement to settle was legally binding and enforceable. Koutroulis' second thoughts and

2

retention of new counsel are not grounds to set aside a valid settlement. (Pl.'s Pet. (Mem.) p. 2 (citations omitted)).

On May 9, 2017, Defendant filed a memorandum in opposition to Plaintiff's Petition to Enforce Settlement Agreement. Therein, Defendant argued "[t]here was no settlement agreement in this matter, as [he] had expressly rejected two material terms of the Plaintiff's proposed settlement agreement, and there was never a meeting of the minds with regard to all material terms of the proposed settlement." (Def.'s Resp. (Mem.) p. 3). Rather, Defendant argued his "responses to the proposed material terms constituted a counteroffer, which was never accepted by ... Plaintiff." (Id.).

On July 20, 2017, a two-day hearing regarding Plaintiff's Petition proceeded before this Court. The following facts were adduced at that hearing.

The settlement negotiations at issue in the underlying litigation commenced in March of 2017. Melanie Graham, Esquire of the Ezold Law Firm represented Plaintiff in those negotiations, while Steven Ludwig, Esquire and Andrew MacDonald, Esquire of Fox Rothschild represented Defendant.

A few days after the March 3, 2017 depositions of Defendant and his wife, Ms. Polities, Mr. Ludwig and Ms. Graham discussed over the telephone resuming settlement negotiations. After talking a bit, Ms. Graham told Mr. Ludwig she did not have authority at the moment, but she would speak to her client and try to get him an offer/demand soon.

On March 23, 2017, Ms. Graham issued a written offer via email to Mr. Ludwig that contained nine material terms. The terms were as follows:

1. Both sides discontinue their claims;
2. ... Koutroulis transfers his Nova stock to Mr. Abdi;
3. Indemnification – ... Koutroulis indemnifies Nova for (a) 40% of any billing discrepancies during his management and (b) any liabilities of Nova

3

arising out of his conduct/failures to act, which are in excess of any insurance coverage;

[4]. A noncompetition/nonsolicitation agreement acceptable to Nova/[Mr.] Abdi;

[5]. ... Koutroulis makes a material warranty that Ms. Polites is not now, nor will during the term of his noncompete, compete with or solicit employees/clients of Nova (breach of which ... will require repayment of monies);

[6]. Mutual [n]ondisparagement agreement and a material warranty that Ms. Polities will not disparage Nova or Mr. Abdi;

7. Confidentiality agreement;

8. Material warranty of no HIPAA breaches;

9. ... Koutroulis and Ms. Polites release any and all claims, known and unknown against Nova and Mr. Abdi.

(Pl.'s Ex. 1).

On March 29, 2017, having authority from Defendant to do so, Mr. Ludwig responded to Ms. Graham's offer. Prefacing that the response, or counter-offer, was "subject to the signing of a mutually agreeable written agreement and the provision of information about [an] [Office of Attorney General] investigation which was disclosed [March 28, 2017,]" Mr. Ludwig responded term-by-term as follows:

1. Both sides discontinue their claims; RESPONSE: CCP Litigation is discontinued and ended. Representation of no other suits filed between or among any parties and [Ms.] Polites. ... Koutroulis will keep the $45,000 he previously received.

2. ... Koutroulis transfers his Nova stock to Mr. Abdi; RESPONSE: The interest already was transferred in May, 2016.

3. Indemnification - ... Koutroulis indemnifies Nova for (a) 40% of any billing discrepancies during his management and (b) any liabilities of Nova arising out of his conduct/failures to act, which are in excess of any insurance coverage; RESPONSE: NO

4. A noncompetition/nonsolicitation agreement acceptable to Nova/[Mr.]Abdi; RESPONSE: OKAY

5. ... Koutroulis makes a material warranty that Ms. Polites is not now, nor will during the term of his noncompete, compete with or solicit employees/clients of Nova (breach of which ... will require repayment of monies); RESPONSE: There are no monies to re-pay; Okay.

6. Mutual [n]ondisparagement agreement and a material warranty that Ms. Polites will not disparage Nova or Mr. Abdi; RESPONSE: Okay

7. Confidentiality agreement; RESPONSE: Okay

8. Material warranty of no HIPAA breaches; RESPONSE: Okay.

4

9.     ... Koutroulis and Ms. Polites release any and all claims, known and unknown against Nova or Mr. Abdi. RESPONSE: Okay with mutuality – [Mr.] Abdi and Nova release any and all claims, known and unknown against ... Koutroulis and Ms. Polites.

10.    Nova/[Mr.] Abdi returns any [of] Koutroulis' property in their possession to him[.]

(Pl.'s Ex. 2). Thus, Mr. Ludwig outright accepted most of Plaintiff's terms and rejected one. He also added one numbered term, i.e. that Nova/Mr. Abdi return any of Koutroulis' property in their possession.

The term Mr. Ludwig outright rejected was Koutroulis indemnifying Nova. Nova had primarily wanted indemnification from Koutroulis because of the OAG investigation and the fact that Koutroulis was no longer an owner or associated with Nova.

In terms of the stock transfer, it was Koutroulis' position that he had already transferred his stock in May of 2016. While Nova did not dispute that Koutroulis had transferred or attempted to transfer his stock, it was concerned that the transfer may not have been done in accordance with the bylaws and/or Pennsylvania Department of Health reporting obligations for change of ownership. As such, Nova wanted the transfer to be dated the same as the release executed pursuant to the settlement.

After receiving this email, Ms. Graham and Mr. MacDonald had a telephone conversation or two regarding terms for settlement. On the phone, they discussed terms of settlement. Regarding indemnification, Ms. Graham and Mr. MacDonald agreed Koutroulis would not indemnify Nova. And as they agreed Koutroulis would not indemnify Nova, Ms. Graham and Mr. MacDonald also agreed Nova would not have to turn over material related to the OAG investigation. Regarding stock transfer, Ms. Graham and Mr. MacDonald agreed the date used for the stock transfer did not matter and they would make sure the transfer was memorialized and done in accordance with the bylaws. These agreements were reached with the

5

attorneys both having authority to do so from their respective clients.

Following her phone call(s) with Mr. MacDonald, Ms. Graham believed there were no outstanding terms and the Parties had reached a settlement. She further expected Mr. MacDonald was going to send her an email confirming their telephone call(s) and the terms of the settlement. When he did not do so in the timeframe she expected, replying to Mr. Ludwig's March 29th email, Ms. Graham sent Mr. MacDonald the following email on April 7, 2017, with copy to Mr. Ludwig as well as Christopher Ezold, Esquire of her firm:

Andrew:

Please see my response below, based on our conversation last week. Our response is provided for settlement purposes subject to the signing of a mutually acceptable written agreement.

We are amendable to Koutroulis not indemnifying Nova, but see no need to produce information about the OAG investigation if there is no indemnification.

1.    Both sides discontinue their claims; representation of no other suits filed between or among the represented parties and Anne Polites; … Koutroulis will keep the $45,000 he previously received.

2.    … Koutroulis transfers his Nova stock to Mr. Abdi; transfer to occur on date release is executed to comply with PA DOH 30 day reporting obligations for change of ownership.

3.    A noncompetition/nonsolicitation agreement acceptable to Nova/[Mr.]Abdi.

4.    … Koutroulis makes a material warranty that Ms. Polites is not now, nor will during the term of his noncompete, compete with or solicit employees/clients of Nova.

5.    Mutual [n]ondisparagement agreement and a material warranty that Ms. Polites will not disparage Nova or Mr. Abdi.

6.    Confidentiality agreement.

7.    Material warranty of no HIPAA breaches.

8.    Mutual release of all claims between [Mr.] Abdi, Nova, Koutroulis

and [Ms.] Polites.

9.     Nova/[Mr.]Abdi returns any [of] Koutroulis' property in their possession to him; the bike, server and suit; specify the property in the release.

(Pl.'s Ex. 3).

In this email, Ms. Graham pulled the fact that there was not going to be indemnification out of the numbered terms because she knew it was important to the defense. On the other hand, she parroted Mr. Ludwig's language regarding signing a mutually acceptable written agreement because she understood the Parties would later memorialize the terms in a formal written agreement.

On April 7, 2017, Mr. Ludwig informed Koutroulis of the email Ms. Graham had sent and the terms that had been agreed to in order to settle the case. (Pl.'s Ex. 5 ¶ 2). On April 14, 2017, Mr. Ludwig withdrew his appearance and Mr. Cronin entered his appearance on behalf of Koutroulis.

On April 18, 2017, Ms. Graham received a cell phone call from Defendant's new counsel, Mr. Cronin. While there was some difficulty communicating due to a poor connection and Mr. Cronin initiated the call as he was getting into a car, by the end of the conversation Ms. Graham understood Defendant would not honor the settlement agreement entered into with prior counsel. Instead, Mr. Cronin indicated he would issue new discovery requests and subpoenas and seek additional depositions. The next day, Ms. Graham filed Plaintiff's Petition to Enforce Settlement.

At the conclusion of the hearing, this Court found the Parties had entered into a binding settlement agreement. Ms. Graham's testimony was credible in all respects and any testimony that was materially inconsistent with her testimony was not credible. Ms. Graham and Mr.

7

MacDonald settled on all essential terms over the phone. At that point, a contract was formed. The issues surrounding indemnity had been resolved. Mr. MacDonald agreed to drop the request for OAG investigative material because the defense got Plaintiff to drop the indemnification it wanted. As for the stock transfer, that was a nonissue. There was never any question the stock was going to be transferred and as between the Parties the date was immaterial.

As for the noncompete/nonsolicitation provision, the Court found the Parties had agreed to this term. And the fact that the Parties had not yet agreed on the specific terms of the noncompete/nonsolicitation was of no moment. Parties can settle a matter even though they intend to adopt a document later which will contain additional terms, and pursuant to well-settled Pennsylvania law, reasonableness governs noncompete/nonsolicitation provisions in any event.

On August 4, 2017, Defendant filed a notice of appeal from the order granting Plaintiff's Petition to Enforce Settlement. On August 28, 2017, Defendant filed a Court-ordered *Pennsylvania Rule of Appellate Procedure* 1925(b) statement. Therein, Defendant asserted, among other things, that this Court erred in finding a settlement agreement had been reached when "the attorneys' for both parties had expressly made clear that their writings to each other were 'provided for settlement purposes subject to the signing of a mutually acceptable written agreement,'" and the Parties had not agreed to "providing Defendant with information about … an attorney general investigation" and "other material terms including … a non-compete and non-solicitation clause in a potential settlement agreement." (Def.'s 1925(b) Statement ¶¶ 9-12).

8

## II. DISCUSSION

"The enforceability of settlement agreements is determined according to principles of contract law." *Mastroni-Mucker v. Allstate Ins. Co.*, 976 A.2d 510, 517 (Pa. Super. C. 2009). "Because contract interpretation is a question of law, [the Superior] Court is not bound by the trial court's interpretation." *Id.* at 517-18. Rather, the "standard of review over questions of law is *de novo* and to the extent necessary, the scope of ... review is plenary as the appellate court may review the entire record in making its decision." *Id.* at 518.

However, when it "is within the province of the trial court to weigh the evidence and decide credibility[,]" the Superior Court "will not reverse those determinations so long as they are supported by the evidence." *Childress v. Bogosian*, 12 A.3d 448, 455 (Pa. Super. Ct. 2011). And under such circumstances, the trial court as "[t]he factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *See Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 39 (Pa. 2011).

"To be enforceable, a settlement agreement must possess all of the elements of a valid contract." *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999). "As with any contract, it is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms, as well as the subject-matter, of the agreement." *Id.* (quotations omitted). "An offeree's power to accept is terminated by (1) a counter-offer by the offeree; (2) a lapse of time; (3) a revocation by the offeror; or (4) death or incapacity of either party." *Mastroni-Mucker*, 976 A.2d at 518. "However, once the offeree has exercised his power to create a contract by accepting the offer, a purported revocation is ineffective as such." *Id.* (quotations omitted).

"Where the parties have agreed on the essential terms of a contract, the fact that they intend to formalize their agreement in writing but have not yet done so does not prevent

9

enforcement of such agreement." *Mazzella*, 739 A.2d at 536. However, if the parties themselves contemplate that their agreement cannot be considered complete, and its terms assented to, before it is reduced to writing, no contract exists until the execution of the writing." *Essner v. Shoemaker*, 143 A.2d 364, 366 (Pa. 1958). "Where a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement." *Mastroni-Mucker*, 976 A.2d at 518.

First, the Court will address Defendant's complaint that it erred in finding a settlement had been "reached when the parties ha[d] not … in any way agreed to any material terms, including … providing Defendant with information about … an attorney general investigation – the information about which Plaintiff's counsel refused to provide Defendant and … was critical for Defendant to know before being in a position to decide whether to settle the subject case and … among the consideration demanded by Defendant…." (Def.'s 1925(b) Statement ¶ 9).

As a preliminary matter, it is disingenuous to make such a broad proclamation that the Parties had not agreed to "any" material terms. Defendant's lead counsel for the settlement discussions, Mr. Ludwig, testified there was no settlement because an accord had not been reached on two terms and because the agreement had not been reduced to writing. The two terms where Mr. Ludwig failed to see agreement reached were in that: (1) "Defendant had proposed that this litigation be discontinued and ended in its entirety; [while] Plaintiff's response was to limit the discontinuance to the claims between or among the represented parties and Ann Polites;" and (2) "Defendant had taken the position that all of his interest in Nova had been transferred in May 2016; [while] Plaintiff was still insistent that there be a transfer of stock back to Nova." (Pl.'s Ex. 4 ¶ 7).[1] Making statements and argument much beyond that, such as that the

---

[1] Regarding stock transfer, Ms. Graham and Mr. MacDonald settled that issue on the phone

10

Parties had not agreed to "any" material terms, smacks of overzealousness and disingenuousness on the part of Defendant's current counsel.

Regarding not providing Defendant with information about an attorney general investigation, Ms. Graham and Mr. MacDonald settled that issue on the phone subsequent to Mr. Ludwig's March 29, 2017 counter-offer. The agreement on that term was reflected in Ms. Graham's April 7, 2017 email; Koutroulis would not be required to indemnify Nova and Nova would not be required to give Koutroulis information about the OAG investigation. Former defense counsel had authority to settle on those terms and any testimony to the contrary such as Koutroulis' testimony that he and his former counsel "discussed the idea of settlement, but not actual terms" was not credible. (N.T., July 24, 2017, p. 14).

Next, the Court will address Defendant's complaint that it erred in finding a settlement had been "reached when the parties ha[d] not actually agreed to other material terms including … a non-compete and non-solicitation clause in a potential settlement agreement." (Def.'s 1925(b) Statement ¶ 10). Here, the Court considered Defendant's current counsel's argument that "[t]he terms that were proposed was acceptable to Mr. Abdi, not defined in scope, geography or time. All that was written back was 'okay' by Mr. Ludwig. That was certainly not a material term that was agreed to." (N.T., July 20, 2017, pp. 10-11).

"If the parties agree on essential terms and intend them to be binding, a contract is formed even though the parties intend to adopt a formal document with additional terms at a later date." *Krause v. Great Lake Holdings, Inc.*, 563 A.2d 1182, 1186 (Pa. Super. Ct. 1989). That is exactly what happened here.

---

subsequent to Mr. Ludwig's March 29, 2017 counter-offer. Mr. Ludwig was not a party to that telephone conversation.

11

Neither Mr. Ludwig nor Mr. MacDonald stated the Parties had not reached agreement regarding noncompetition/nonsolicitation. That is because they clearly had, with Mr. Ludwig early on okaying such a provision. The fact that the Parties had not yet defined the scope, geography, or time for such a provision did not prevent a contract from being form as it was within their power to agree on the term and then adopt a formal document that defined the scope, geography, and time at a later date.

Moreover, the Court could not help but consider that the laws in this area are fairly well developed and settled, and covenants not to compete ancillary to both contracts for the sale of a business and contracts for employment are subject to reasonableness examination. *See Scobell Inc. v. Schade*, 688 A.2d 715, 718 (Pa. 1997). Ms. Graham testified the Parties agreed to the noncompetition/nonsolicitation term and she anticipated they "would come up with a reasonable noncompetition/nonsolicitation [provision] that would work [for] both parties and incorporate it into the release[.]" (N.T., July 20, 2017, pp. 15, 22, 44). As stated above, that is sufficient to form a contract. And in the event the Parties later had any difficulty defining the scope, geography, and time for the noncompetition/nonsolicitation provision, they had Pennsylvania case law and reasonableness to fill in the gaps.

Finally, the Court will address Defendant's complaint that it erred in finding a settlement had been "reached when the parties ha[d] not actually agreed to the settlement of this matter as evidence[d] by ... the attorneys[] for both parties ha[ving] expressly made clear that their writings to each other were 'provided for settlement purposes subject to the signing of a mutually acceptable written agreement[,]' which should have made it clear to the Court that the[] parties had not yet agreed to a settlement." (Def.'s 1925(b) Statement ¶ 11).

As stated above, "[w]here the parties have agreed on the essential terms of a contract, the fact that they intend to formalize their agreement in writing but have not yet done so does not prevent enforcement of such agreement." *Mazzella*, 739 A.2d at 536. However, if the parties themselves contemplate that their agreement cannot be considered complete, and its terms assented to, before it is reduced to writing, no contract exists until the execution of the writing." *Essner*, 143 A.2d at 366.

Thus, Pennsylvania law in this area is in keeping with the Restatement (Second) of Contracts Section 27, *Existence of Contract Where Written Memorial is Contemplated*, which provides: "Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but the circumstances may show that the agreements are preliminary negotiations." Restatement (Second) of Contracts § 27 (1981). As explained in the comments,

> Parties who plan to make a final written instrument as the expression of their contract necessarily discuss the proposed terms of the contract before they enter into it and often, before the final writing is made, agree upon all the terms which they plan to incorporate therein. This they may do orally or by exchange of several writings. It is possible thus to make a contract the terms of which include an obligation to execute subsequently a final writing which shall contain certain provisions. If parties have definitely agreed that they will do so, and that the final writing shall contain these provisions and no others, they have then concluded the contract.

Id. (cmt. a).

As explained in the comment above, what happened here was that the Parties planned to make a final written instrument as the expression of their settlement. However, before the final writing was made, the Parties agreed upon all the terms they planned to incorporate therein. They did so by exchange of the March 23rd and 29th emails and Ms. Graham and Mr. MacDonald's

13

subsequent telephone conversation(s). And the fact that they also agreed they would subsequently execute a final writing that contained the terms of their settlement is of no moment because they had already agreed on the essential terms and formed a contract.

In *Emigrant Bank v. UBS Real Estate Securities, Inc.*, 854 N.Y.S.2d 39 (2008), a sister jurisdiction made a similar determination under similar circumstances. In that case, one party bid on the other party's mortgage loan portfolio in an online auction, and the bid was accepted. *Id.* at 40. "The bid form provided that the sale [was] 'subject to a mutually acceptable [p]urchase and [s]ale agreement, which will be subject to negotiation, but substantially in the form of the agreement posted to the bidding Web site." *Id.* (brackets omitted). The bid form also "provided space for the bidder to add conditions, and [the bidder] added several, including: 'a mutually acceptable mortgage loan sale and servicing agreement will be negotiated in good faith. The agreement will contain standard reps and warranties....'" *Id.* "After initially indicating its readiness to execute the agreement, [the bidder] broke off negotiations..." and the seller brought an action for breach of contract. *Id.*

On appeal, the appellate court analyzed the issue of whether the "subject to" language in the bid form "unmistakably conditioned assent on the execution of a definitive agreement at some later juncture." *Id.* at 41. In concluding that it did not, the court noted "[a]ny later agreement to be executed was limited to terms substantially the same as those in the agreement posted on the bidding Web site and was to contain the standard industry representations and warranties as set forth in the conditions added by [the bidder] on the bid form." Id. The court also distinguished cases that had been relied upon "for the proposition that the bid was conditioned on the execution of a more definitive binding agreement...." *Id.* In contrast to the "subject to"

14

language in the case before it, the court found those cases "involve[d] unequivoval reservations of assent." *Id.*

Here, like the "subject to a mutually acceptable purchase and sale agreement" language used in *Emigrant Bank,* the "subject to the signing of a mutually agreeable written agreement" language used by Mr. Ludwig in this case did not condition assent on the execution of a more formal or final writing, nor give Plaintiff and its counsel reason to know Defendant and his prior counsel regarded the agreement as incomplete and intended that no obligation shall exist until the agreement had been reduced to a final writing. Rather, as Ms. Graham credibly testified to, this language merely subjectively and objectively indicated to Plaintiff and its counsel Defendant's intent to want to execute a formal written agreement at a later date, which Plaintiff agreed to.

In sum, the Parties had clearly agreed on all the material terms for settlement. The "subject to" language used did not condition assent on the execution of a formal written agreement at a later date, it merely created an obligation to prepare and adopt a written memorial of their agreement. And the fact that the formal written document would subsequently define the scope, geography, and time for the noncompetition/nonsolicitation provision is of no moment as it was within the power of the Parties to do so. Defendant's retention of new counsel and second thoughts are not grounds to avoid or undo a valid settlement agreement and the Superior Court should not permit them to do so.

15

**WHEREFORE**, for the above-mentioned reasons, this Court's order granting Plaintiff's Petition to Enforce Settlement should be affirmed.[2]

**BY THE COURT:**

McINERNEY, J

---

[2] To the extent any of Defendant's complaints are not addressed directly or indirectly above, they are also without merit. The Court consider all evidence of record. Considering that evidence, the Parties through their counsel, whom had authority to do so, clearly agreed on all essential terms of the settlement. The signing of a later, formal written agreement was not a condition precedent to settlement and Defendant and his current counsel's attempts to undo the settlement with non-credible testimony and over-the-top arguments should not be countenanced.

16

Christopher E. Ezold, Esq.
I.D. No. 77369
Email: cezold@ezoldlaw.com
Melanie Bork Graham, Esq.
I.D. No. 93746                                    Attorneys for Plaintiff
Email: mgraham@ezoldlaw.com
The Ezold Law Firm, P.C.
One Belmont Avenue, Suite 501
Bala Cynwyd, PA 19004
Tel:   (610) 660-5585
Fax:   (610) 660-5595

| | | |
|---|---|---|
| NOVA HOME HEALTH CARE, INC. | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY, |
| Plaintiff, | : | PENNSYLVANIA |
| | : | TRIAL DIVISION-CIVIL |
| v. | : | |
| | : | |
| PETER KOUTROULIS, UNITED HOME | : | Commerce Program |
| HEALTH CARE, LLC, JOHN/JANE DOE 1, and | : | July Term, 2016 |
| JOHN/JANE DOE 2 | : | |
| | : | NO. 160700709 |
| Defendants. | | |

## **EXHIBITS**

1. 3/23/2017 Email from Attorney Graham to Attorney Ludwig re: settlement offer

2. 3/29/2017 Email from Attorney Ludwig to Attorney Graham re: response to settlement offer

3. 4/7/2017 Email from Attorney Graham to Attorney Ludwig re: response to 3/29/2017 counter-offer

4. Affidavit of Steven Ludwig

5. Affidavit of Peter Koutroulis

6. Affidavit of Joseph Cronin

7. Affidavit of Melanie Graham

8. 4/20/2017 Correspondence from Attorney Graham to Attorney Cronin re: telephone conversation

9. 6/12/2017 and 6/13/2017 Attorney Ezold email and correspondence with Attorney Paradise re: Ludwig/MacDonald subpoenas

## Melanie Bork Graham, Esq.

**From:** Ludwig, Steven K. <SLudwig@foxrothschild.com>
**Sent:** Thursday, March 23, 2017 4:13 PM
**To:** Melanie Bork Graham, Esq.
**Cc:** Christopher Ezold, Esq.
**Subject:** RE: Nova Home Health Care, Inc. v. Peter Koutroulis, et al-confidential settlement communications

Thank you. I will review with my clients.

SKL

**Steven Ludwig**
Partner
**Fox Rothschild LLP**
2000 Market Street
20th Floor
Philadelphia, PA 19103-3222
(267) 999-9312 (office and cell)
(610) 416-8995 (cell only and text messages)
(215) 299-2150 (fax)
SLudwig@foxrothschild.com
www.foxrothschild.com

**From:** Melanie Bork Graham, Esq. [mailto:mgraham@ezoldlaw.com]
**Sent:** Thursday, March 23, 2017 2:29 PM
**To:** Ludwig, Steven K. <SLudwig@foxrothschild.com>
**Cc:** Christopher Ezold, Esq. <CEzold@ezoldlaw.com>
**Subject:** Nova Home Health Care, Inc. v. Peter Koutroulis, et al-confidential settlement communications

Steven,

I have authority for the following offer:

1.      Both sides discontinue their claims;
2.      Mr. Koutroulis transfers his Nova stock to Mr. Abdi;
3.      Indemnification – Mr. Koutroulis indemnifies Nova for (a) 40% of any billing discrepancies during his management and (b) any liabilities of Nova arising out of his conduct/failures to act, which are in excess of any insurance coverage;
3.      A noncompetition/nonsolicitation agreement acceptable to Nova/Abdi;
4.      Mr. Koutroulis makes a material warranty that Ms. Polites is not now, nor will during the term of his noncompete, compete with or solicit employees/clients of Nova (breach of which warranty will require repayment of monies);

1

5.    Mutual Nondisparagement agreement and a material warranty that Ms. Polites will not disparage Nova or Mr. Abdi;

7.    Confidentiality agreement;

8.    Material warranty of no HIPAA breaches;

9.    Mr. Koutroulis and Ms. Polites release any and all claims, known and unknown against Nova or Mr. Abdi.

Please advise.

Best, Melanie

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

**From:** Ludwig, Steven K.
**To:** Melanie Bork Graham, Esq.
**Cc:** MacDonald, Andrew M.
**Subject:** Nova Home Health Care, Inc. v. Peter Koutroulis, et al-confidential settlement communications
**Date:** Wednesday, March 29, 2017 9:44:26 AM



Melanie,

Here is our response for settlement purposes only and subject to the signing of a mutually agreeable written agreement and the provision of information about the investigation which was disclosed yesterday:

1.      Both sides discontinue their claims; RESPONSE:  CCP Litigation is discontinued and ended. Representation of no other suits filed between or among any parties and Anne Polites. Mr. Koutroulis will keep the $45,000 he previously received.

2.      Mr. Koutroulis transfers his Nova stock to Mr. Abdi; RESPONSE:  The interest already was transferred in May, 2016.

3.      Indemnification – Mr. Koutroulis indemnifies Nova for (a) 40% of any billing discrepancies during his management and (b) any liabilities of Nova arising out of his conduct/failures to act, which are in excess of any insurance coverage;  RESPONSE:  NO

4.      A noncompetition/nonsolicitation agreement acceptable to Nova/Abdi; RESPONSE:  OKAY

5.      Mr. Koutroulis makes a material warranty that Ms. Polites is not now, nor will during the term of his noncompete, compete with or solicit employees/clients of Nova (breach of which warranty will require repayment of monies); RESPONSE:  There are no monies to re-pay; Okay.

6.      Mutual Nondisparagement agreement and a material warranty that Ms. Polites will not disparage Nova or Mr. Abdi;  RESPONSE:  Okay

7.      Confidentiality agreement; RESPONSE:  Okay

8.      Material warranty of no HIPAA breaches; RESPONSE:  Okay.

9.      Mr. Koutroulis and Ms. Polites release any and all claims, known and unknown against Nova or Mr. Abdi. RESPONSE:  Okay with mutuality – Abdi and

Nova release any and all claims, known and unknown against Mr. Koutroulis and Ms. Polites.

10.    Nova/Abdi returns any Koutroulis' property in their possession to him

SKL

**Steven Ludwig**
Partner
**Fox Rothschild LLP**
2000 Market Street
20th Floor
Philadelphia, PA 19103-3222
(267) 999-9312 (office and cell)
(610) 416-8995 (cell only and text messages)
(215) 299-2150 (fax)
SLudwig@foxrothschild.com
www.foxrothschild.com

**From:** Melanie Bork Graham, Esq. [mailto:mgraham@ezoldlaw.com]
**Sent:** Thursday, March 23, 2017 2:29 PM
**To:** Ludwig, Steven K. <SLudwig@foxrothschild.com>
**Cc:** Christopher Ezold, Esq. <CEzold@ezoldlaw.com>
**Subject:** Nova Home Health Care, Inc. v. Peter Koutroulis, et al-confidential settlement communications

Steven,

I have authority for the following offer:

1.    Both sides discontinue their claims;

2.    Mr. Koutroulis transfers his Nova stock to Mr. Abdi;

3.    Indemnification – Mr. Koutroulis indemnifies Nova for (a) 40% of any billing discrepancies during his management and (b) any liabilities of Nova arising out of his conduct/failures to act, which are in excess of any insurance coverage;

3.    A noncompetition/nonsolicitation agreement acceptable to Nova/Abdi;

4.    Mr. Koutroulis makes a material warranty that Ms. Polites is not now, nor will during the term of his noncompete, compete with or solicit employees/clients of Nova (breach of which warranty will require repayment of monies);

5.    Mutual Nondisparagement agreement and a material warranty that Ms. Polites will not

disparage Nova or Mr. Abdi;

7.      Confidentiality agreement;

8.      Material warranty of no HIPAA breaches;

9.      Mr. Koutroulis and Ms. Polites release any and all claims, known and unknown against Nova or Mr. Abdi.

Please advise.

Best, Melanie

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

| From: | Melanie Bork Graham, Esq. |
| --- | --- |
| To: | MacDonald, Andrew M. |
| Cc: | Christopher Ezold, Esq.; "Ludwig, Steven K." |
| Subject: | RE: Nova Home Health Care, Inc. v. Peter Koutroulis, et al-confidential settlement communications |
| Date: | Friday, April 7, 2017 3:39:00 PM |

Andrew:

Please see my response below, based on our conversation last week.  Our response is provided for settlement purposes subject to the signing of a mutually acceptable written agreement.

We are amendable to Koutroulis not indemnifying Nova, but see no need to produce information about the OAG investigation if there is no indemnification.

1.  Both sides discontinue their claims; representation of no other suits filed between or among the represented parties and Anne Polites; Mr. Koutroulis will keep the $45,000 he previously received.

2.  Mr. Koutroulis transfers his Nova stock to Mr. Abdi; transfer to occur on date release is executed to comply with PA DOH 30 day reporting obligations for change of ownership.

3.  A noncompetition/nonsolicitation agreement acceptable to Nova/Abdi.

4.  Mr. Koutroulis makes a material warranty that Ms. Polites is not now, nor will during the term of his noncompete, compete with or solicit employees/clients of Nova.

5.  Mutual Nondisparagement agreement and a material warranty that Ms. Polites will not disparage Nova or Mr. Abdi.

6.  Confidentiality agreement.

7.  Material warranty of no HIPAA breaches.

8.  Mutual release of all claims between Abdi, Nova, Koutroulis and Polites.

9.  Nova/Abdi returns any Koutroulis' property in their possession to him; the bike, server and suit; specify the property in the release.

Please advise.

Best, Melanie


**From:** Ludwig, Steven K. [mailto:SLudwig@foxrothschild.com]
**Sent:** Wednesday, March 29, 2017 9:44 AM
**To:** Melanie Bork Graham, Esq. <mgraham@ezoldlaw.com>

Melanie,

Here is our response for settlement purposes only and subject to the signing of a mutually agreeable written agreement and the provision of information about the investigation which was disclosed yesterday:

1.      Both sides discontinue their claims; RESPONSE:  CCP Litigation is discontinued and ended. Representation of no other suits filed between or among any parties and Anne Polites. Mr. Koutroulis will keep the $45,000 he previously received.

2.      Mr. Koutroulis transfers his Nova stock to Mr. Abdi; RESPONSE:  The interest already was transferred in May, 2016.

3.      Indemnification – Mr. Koutroulis indemnifies Nova for (a) 40% of any billing discrepancies during his management and (b) any liabilities of Nova arising out of his conduct/failures to act, which are in excess of any insurance coverage; RESPONSE:  NO

4.      A noncompetition/nonsolicitation agreement acceptable to Nova/Abdi; RESPONSE:  OKAY

5.      Mr. Koutroulis makes a material warranty that Ms. Polites is not now, nor will during the term of his noncompete, compete with or solicit employees/clients of Nova (breach of which warranty will require repayment of monies); RESPONSE:  There are no monies to re-pay; Okay.

6.      Mutual Nondisparagement agreement and a material warranty that Ms. Polites will not disparage Nova or Mr. Abdi;  RESPONSE:  Okay

7.      Confidentiality agreement; RESPONSE:  Okay

8.      Material warranty of no HIPAA breaches; RESPONSE:  Okay.

9.      Mr. Koutroulis and Ms. Polites release any and all claims, known and unknown against Nova or Mr. Abdi. RESPONSE:  Okay with mutuality – Abdi and Nova release any and all claims, known and unknown against Mr. Koutroulis

and Ms. Polites.

10.      Nova/Abdi returns any Koutroulis' property in their possession to him

SKL

**Steven Ludwig**
Partner
**Fox Rothschild LLP**
2000 Market Street
20th Floor
Philadelphia, PA 19103-3222
(267) 999-9312 (office and cell)
(610) 416-8995 (cell only and text messages)
(215) 299-2150 (fax)
SLudwig@foxrothschild.com
www.foxrothschild.com

**From:** Melanie Bork Graham, Esq. [mailto:mgraham@ezoldlaw.com]
**Sent:** Thursday, March 23, 2017 2:29 PM
**To:** Ludwig, Steven K. <SLudwig@foxrothschild.com>
**Cc:** Christopher Ezold, Esq. <CEzold@ezoldlaw.com>
**Subject:** Nova Home Health Care, Inc. v. Peter Koutroulis, et al-confidential settlement communications

Steven,

I have authority for the following offer:

1.      Both sides discontinue their claims;
2.      Mr. Koutroulis transfers his Nova stock to Mr. Abdi;
3.      Indemnification – Mr. Koutroulis indemnifies Nova for (a) 40% of any billing discrepancies during his management and (b) any liabilities of Nova arising out of his conduct/failures to act, which are in excess of any insurance coverage;
3.      A noncompetition/nonsolicitation agreement acceptable to Nova/Abdi;
4.      Mr. Koutroulis makes a material warranty that Ms. Polites is not now, nor will during the term of his noncompete, compete with or solicit employees/clients of Nova (breach of which warranty will require repayment of monies);
5.      Mutual Nondisparagement agreement and a material warranty that Ms. Polites will not disparage Nova or Mr. Abdi;

7. Confidentiality agreement;
8. Material warranty of no HIPAA breaches;
9. Mr. Koutroulis and Ms. Polites release any and all claims, known and unknown against Nova or Mr. Abdi.

Please advise.

Best, Melanie

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

| | |
|---|---|
| NOVA HOME HEALTH CARE, INC. | IN THE COURT OF COMMON PLEAS |
| Plaintiff, | PHILADELPHIA COUNTY |
| v. | CIVIL DIVISION |
| | COMMERCE PROGRAM |
| PETER KOUTROULIS, UNITED HEALTH | |
| CARE, LLC, JOHN/JANE DOE 1, and | July Term, 2016 |
| JOHN/JANE DOE 2 | |
| Defendants. | No. 160700709 |

## AFFIDAVIT OF STEVEN K. LUDWIG, ESQUIRE

I, Steven K. Ludwig, Esquire, being duly sworn, deposes and states under penalty of perjury:

1.　I am a partner with Fox Rothschild LLP and formerly represented Defendant Peter Koutroulis in this matter.

2.　My co-counsel was Andrew MacDonald, Esquire, who is an associate with Fox Rothschild LLP.

3.　Appended hereto is a printout of emails which were exchanged with Melanie Graham, Esquire, who is an attorney with The Ezold Law Firm, P.C., counsel for Plaintiff.

4.　During March and April, 2017, then counsel for the parties engaged in settlement negotiations.

5.　On March 23, 2017, counsel for Plaintiff forwarded a settlement offer with nine enumerated proposals.  See appended email string, p. 3.

6.　On March 29, 2017, counsel for Defendant responded to the nine enumerated proposals, indicating agreement with respect to some of them and providing a counterproposal

Case ID: 160700709

Control No.: 17042267

with respect to others. In addition, counsel for Defendant also indicated that any settlement agreement would need to provide for the return of Defendant Koutroulis' property in the possession of Plaintiff and its owner. The March 29, 2017 counterproposal also indicated that the counterproposal was "... subject to the signing of a mutually agreeable written agreement and the provision of information about the [Office of Attorney General] investigation which was disclosed yesterday [March 28, 2017]." See appended email string, pp. 1-2.

7. On April 7, 2017, counsel for Plaintiff sent a response to counsel for Defendant advising that there was an agreement with respect to some of the proposals set forth in the March 29th counterproposal. See appended email string, p. 1. However, there was not an agreement reached with respect to at least two material matters:

- Defendant had proposed that this litigation be discontinued and ended in its entirety; Plaintiff's response was to limit the discontinuance to the claims between or among the represented parties and Ann Polites; and

- Defendant had taken the position that all of his interest in Nova had been transferred in May 2016; Plaintiff was still insistent that there be a transfer of stock back to Nova.

8. Although substantial progress had been made toward reaching a settlement, the material matters referenced in the preceding paragraph did not result in a settlement of this litigation.

STEVEN K. LUDWIG

Sworn to and Subscribed
Before me this 15th day
of April           2017

Mary A. Oreo
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MARY A OREO
Notary Public
PHILADELPHIA CITY, PHILADELPHIA CNTY
My Commission Expires May 22, 2017

2

Case ID: 160700709
Control No.: 17042267

CRONIN TRIAL LAWYERS
By: Joseph D. Cronin, Esquire
Attorney I.D. No.: 61997
Two Penn Center Plaza
1500 JFK Boulevard, Suite 1010
Philadelphia, PA 19102
(215) 751-9001                                              *Attorney for Defendants*

| | |
|---|---|
| NOVA HOME HEALTH CENTER, INC., | COURT OF COMMON PLEAS |
| : | PHILADELPHIA COUNTY |
| Plaintiff | CIVIL DIVISION |
| : | COMMERCE PROGRAM |
| v. | |
| : | JULY TERM, 2016 |
| PETER KOUTROULIS, UNITED HEALTH | |
| CARE, LLC, JOHN/JANE DOE 1, and | No. 160700709 |
| JOHN/JANE DOE 2, | |
| : | |
| Defendants | |

## AFFIDAVIT OF PETER KOUTROULIS

Peter Koutroulis, being duly sworn, affirms and declares:

1.    I am one of the Defendants in this matter. Previously, when preliminary settlement talks were being engaged in, I was represented by Steven K. Ludwig, Esquire.

2.    On April 7, I was informed by Ludwig that Plaintiff had sent an email detailing nine (9) terms which I had to agree to in order to settle the case.

3.    I specifically told Ludwig that, based on those terms, in their entirety, all of which were material to me, he did not have authority to settle the case on my behalf.

4.    After rejecting the April 7, 2017 proposal, I was never given another settlement offer to entertain. Again, I never agreed to settle this case.

Case ID: 160700709
Control No.: 17042267

## CERTIFICATE OF SERVICE

I hereby certify that on this date true and correct copies of the foregoing Praecipe to Attach was served *via* the Philadelphia Court of Common Pleas' electronic filing system on all parties and counsel of record.

Respectfully submitted,

CRONIN TRIAL LAWYERS

By: _____

Joseph D. Cronin, Esquire

*Attorney for Defendant Peter Koutroulis*

Dated: May 9, 2017

CRONIN TRIAL LAWYERS
By: Joseph D. Cronin, Esquire
Attorney I.D. No.: 61997
Two Penn Center Plaza
1500 JFK Boulevard, Suite 1010
Philadelphia, PA 19102
(215) 751-9001                                              *Attorney for Defendants*

| | |
|---|---|
| NOVA HOME HEALTH CENTER, INC., : | COURT OF COMMON PLEAS |
| : | PHILADELPHIA COUNTY |
| Plaintiff : | CIVIL DIVISION |
| : | COMMERCE PROGRAM |
| v. : | |
| : | JULY TERM, 2016 |
| PETER KOUTROULIS, UNITED HEALTH : | |
| CARE, LLC, JOHN/JANE DOE 1, and : | No. 160700709 |
| JOHN/JANE DOE 2, : | |
| : | |
| Defendants : | |
| : | |

## AFFIDAVIT OF JOSEPH D. CRONIN, ESQUIRE

Joseph D. Cronin, Esquire, being duly sworn, affirms and declares:

1.      I am the owner and managing attorney of Cronin Trial Lawyers, which is located at 1500 John F. Kennedy Boulevard, Suite 1010, Philadelphia, PA 19102.

2.      I am counsel for the Defendant, Peter Koutroulis in this matter.

3.      On April 14, 2017, Steven K. Ludwig, Esquire withdrew his appearance on behalf of Defendant Peter Koutroulis, and I entered my appearance in this matter.

4.      On April 18, I had a telephone conversation with Melanie Bork Graham, Esquire, who is counsel for the Plaintiff. During the phone call, I advised Ms. Graham that there was additional discovery I needed to conduct, given that Plaintiff had never even been deposed or served with written interrogatory requests. Moreover, during that conversation, Ms. Graham never claimed the case was settled.

5.      On April 19, Plaintiff filed the instant Petition to Enforce the Settlement, much

to my surprise.

6.    ·That same day, I wrote a letter to Ms. Graham, memorializing our conversation from the day prior and demanding that the Petition be withdrawn, as it is frivolous. See **Exhibit C**.

7.    To reiterate, Ms. Graham never informed me she believed the case to have been settled, specifically denied that the case had been settled, and requested that I advise her with what discovery needs I had remaining for the case. Less than 24 hours later, Plaintiff filed the instant Petition.

8.    Steven K. Ludwig informed me that no settlement had been reached, as there were still material terms that had not been agreed upon. See **Exhibit A**.

I affirm and declare, subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities, that the facts stated above are true and correct to the best of my knowledge, information and belief.

Joseph D. Cronin, Esquire

Date: May 9, 2017

FILED
19 APR 2017 03:50 pm
Civil Administration
E. MASCUILLI

COURT OF COMMON PLEAS PHILADELPHIA COUNTY, PENNSYLVANIA
TRIAL DIVISION-CIVIL

| | |
|---|---|
| NOVA HOME HEALTH CARE, INC. : | Commerce Program |
| Plaintiff, : | |
| : | July Term, 2016 |
| v. : | |
| : | NO. 160700709 |
| PETER KOUTROULIS, UNITED HOME : | |
| HEALTH CARE, LLC, JOHN/JANE DOE 1, and : | |
| JOHN/JANE DOE 2 : | |
| Defendants. | |

## AFFIDAVIT IN SUPPORT OF PETITION TO ENFORCE SETTLEMENT AGREEMENT

1.      I, Melanie Bork Graham, Esquire, being duly affirmed according to law, depose and say that I am Plaintiff's attorney in the above-captioned action.

2.      I aver that On March 7, 2017, counsel for the parties started settlement discussions orally via telephone.

3.      I aver that On March 23, 2017 I issued a written offer via email to Defense counsel containing ten (10) material terms.

4.      I aver that via email dated March 29, 2017 Defense counsel accepted nine (9) of the terms and rejected one (1).

5.      I aver that Defense counsel also added an additional term in the March 29 email.

6.      I aver that counsel for the parties mutually agreed to remove the one term objectionable to Defendant in exchange for also removing the additional term in the March 29 email via telephone call on March 31, 2017.

PLAINTIFF'S
EXHIBIT
F

Case ID: 160700709
Control No: 17042267

7. I aver that by email dated April 7. 2017. I confirmed the agreement on the current terms. leaving open only the proposed date of one term.

8. I aver that the April 7 email was the last communication on settlement.

9. I aver that I have copies of the confidential communications in form of emails.

10. I aver that I have produced the emails to Defendant's new counsel.

11. I aver that I able produce the confidential emails to the Court for *in camera* review.

The foregoing statement is true and correct to the best of my knowledge. information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

Melanie Bork Graham. Esquire

Sworn to and subscribed

before me this _19_ day

of _April_ . 2017

Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Kathleen C. Finney. Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires May 1, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

2

Andrew M. MacDonald (4308) - Selected Entries

Printed from Intapp Time on 7/20/2017 10:04:25 AM

---

**3/30/2017**

| | | | |
|---|---|---|---|
| **Client:** | 156423 | | PETER KOUTROULIS |
| **Matter:** | 00001 | | NOVA HOME HEALTH CARE LLC |
| **Location:** | 10 | | PHILADELPHIA |
| **Hours:** | 1.0 | | Billable |
| **Operator:** | AMACDONALD | | Andrew M. MacDonald |
| **Status:** | | | Converted: 2017-04-03 15:07:26 |

Call with opposing counsel re settlement. Call with Ann Polities re settlement. Call with SKL, Ann Polities and P. Koutroulis re settlement.

                                     **Subtotal for 00001:**    **1.0**

     **Subtotal for 156423:**    **1.0**

---

Andrew M. MacDonald (4308) - Selected Entries

Printed from Intapp Time on 7/20/2017 10:04:25 AM

| | | | | | |
|---|---|---|---|---|---|
| **Unrelease Total:** | 0.0 | **Billable Total:** | 1.0 | **Total:** | 1.0 |
| **Released Total:** | 0.0 | **Non-Billable Total:** | 0.0 | **Number of Entries:** | 1 |
| **Converted Total:** | 1.0 | **Pro Bono Total:** | 0.0 | | |

| | |
|---|---|
| **From:** | Christopher Ezold, Esq. |
| **Sent:** | Monday, June 12, 2017 2:21 PM |
| **To:** | Kate Finney |
| **Subject:** | FW: Nova Home Health Care, Inc. v. Peter Koutroulis, et al. - Docket No.: 160700709 |
| **Attachments:** | Christopher E Ezold Esq .vcf |

See below; please prep subpoeanas for both for Philly.



**Christopher E. Ezold Esq.**
The Ezold Law Firm, P.C.

(610) 660-5585 W
(484) 919 5336 Mobile
CEzold@Ezoldlaw.com
One Belmont Avenue, St. 501
Bala Cynwyd, PA 19004
www.ezoldlaw.com

**From:** Paradise, Thomas [mailto:TParadise@foxrothschild.com]
**Sent:** Monday, June 12, 2017 1:30 PM
**To:** Joseph D. Cronin <jcronin@croninfirm.com>; Christopher Ezold, Esq. <CEzold@ezoldlaw.com>
**Subject:** RE: Nova Home Health Care, Inc. v. Peter Koutroulis, et al. - Docket No.: 160700709

Please provide subpoenas for Mr. Ludwig and Mr. MacDonald to appear for this hearing. I will accept service on their behalf.

**Thomas D. Paradise**
General Counsel
**Fox Rothschild LLP**
2000 Market Street
20th Floor
Philadelphia, PA 19103-3222
(215) 299-2774 - direct
(215) 299-2150- fax
TParadise@foxrothschild.com
www.foxrothschild.com

**From:** Joseph D. Cronin [mailto:jcronin@croninfirm.com]
**Sent:** Monday, June 12, 2017 12:18 PM
**To:** Christopher Ezold, Esq. <CEzold@ezoldlaw.com>
**Cc:** peternkoutroulis@gmail.com; Paradise, Thomas <TParadise@foxrothschild.com>; Ann Polites <annpolites@verizon.net>
**Subject:** RE: Nova Home Health Care, Inc. v. Peter Koutroulis, et al. - Docket No.: 160700709

Please see the attached correspondence.

1

Thank you.

From: Ann Polites [mailto:annpolites@verizon.net]
Sent: Monday, June 12, 2017 11:01 AM
To: Joseph D. Cronin <jcronin@croninfirm.com>
Cc: peternkoutroulis@gmail.com
Subject: Re: DELIVERED: RE: Nova Home Health Care, Inc. v. Peter Koutroulis, et al. - DocketNo.: 160700709 - Letter for Evidentiary Hearing

Good Morning Joe,

Hope you had a great weekend!

Have you heard back from the courts on 07/07/17. I just received a notice in the mail that I have to be in court that day for a work issue. If 07/07/17 was approved, maybe I can get a letter from you that states I have another court date that day and maybe it can be moved.

Let me know when you have a moment.

-----Original Message-----
From: Joseph D. Cronin <jcronin@croninfirm.com>
To: Peter Koutroulis <peternkoutroulis@gmail.com>
Cc: Ann Polites <annpolites@verizon.net>
Sent: Thu, Jun 8, 2017 8:12 pm
Subject: Re: DELIVERED: RE: Nova Home Health Care, Inc. v. Peter Koutroulis, et al. - DocketNo.: 160700709 - Letter for Evidentiary Hearing

Perfect.   We have to make sure that the date is good for the judge. But in the meanwhile, please put it in your calendar.

*Joseph D. Cronin, Esquire*
Cronin Trial Lawyers
Two Penn Center Plaza
1500 John F. Kennedy Boulevard
Suite 1010
Philadelphia, Pennsylvania 19102
(215)751-9001 (Tel)
(215)751-9009 (Fax)
(856)340-2356 (Cell)
Email: jcronin@CroninFirm.com
Web: www.CroninFirm.com

***Sent from my iPhone so please excuse any typos and/or abbreviations.***

On Jun 8, 2017, at 7:20 PM, Peter Koutroulis <peternkoutroulis@gmail.com> wrote:

Yes thanks for the message.

On Thursday, June 8, 2017, Joseph D. Cronin <jcronin@croninfirm.com> wrote:

Hi Peter and Ann... Can you please make sure you mark this date on your calendar's... I.e. Friday, July 7.   I'm hoping that the court approves the date.

*Joseph D. Cronin, Esquire*
Cronin Trial Lawyers
Two Penn Center Plaza
1500 John F. Kennedy Boulevard
Suite 1010
Philadelphia, Pennsylvania 19102
(215)751-9001 (Tel)

2

(215)751-9009 (Fax)
(856)340-2356 (Cell)
Email: jcronin@CroninFirm.com
Web: www.CroninFirm.com

*Sent from my iPhone so please excuse any typos and/or abbreviations.*

Begin forwarded message:

> **From:** Benjamin Smith <bsmith@croninfirm.com>
> **Date:** June 8, 2017 at 4:21:24 PM EDT
> **To:** "Joseph D. Cronin" <jcronin@croninfirm.com>
> **Subject: FW: DELIVERED: RE: Nova Home Health Care, Inc. v. Peter Koutroulis, et al. - DocketNo.: 160700709 - Letter for Evidentiary Hearing**
>
>
> -----Original Message-----
> From: notify@e.faxmsg.net [mailto:notify@e.faxmsg.net]
> Sent: Thursday, June 08, 2017 4:15 PM
> To: Benjamin Smith <bsmith@croninfirm.com>
> Subject: DELIVERED: RE: Nova Home Health Care, Inc. v. Peter Koutroulis, et al. - DocketNo.: 160700709 - Letter for Evidentiary Hearing
>
> *Fax Transmission Successful*
>
> Submit Time: 6/8/2017 4:13:12 PM
> Start Time: 6/8/2017 4:13:16 PM
>
> Your fax to 1215-686-2619 was delivered successfully:
> Receiver CSID:
> Page Count: 2
> Connection Seconds: 98
> Retries: 0

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

## Kate Finney

| | |
|---|---|
| **From:** | Kate Finney |
| **Sent:** | Tuesday, June 13, 2017 2:07 PM |
| **To:** | 'TParadise@foxrothschild.com' |
| **Cc:** | 'jcronin@croninfirm.com'; Christopher Ezold, Esq.; Melanie Bork Graham, Esq. |
| **Subject:** | Nova Home Health Care, Inc. v. Peter Koutroulis, et al. - Docket No.: 160700709 |
| **Attachments:** | 6-13-17 Ltr to T Paradise w subpoenas.pdf |

Attorney Paradise:

Please see the attached correspondence sent on behalf of Attorney Ezold.

Regards,

Kate Finney

Legal Administrative Assistant

The Ezold Law Firm, P.C.

One Belmont Avenue

Suite 501

Bala Cynwyd, PA 19004

Phone: 610-660-5585

Facsimile: 610-660-5595

On the Web: www.Ezoldlaw.com <http://www.Ezoldlaw.com>

This e-mail message and any files transmitted with it are subject to attorney-client privilege and contain confidential information intended only for the person(s) to whom this e-mail message is addressed. If you have received this e-mail message by error, please notify the sender immediately by telephone or e-mail and destroy the original message without making a copy. Our main telephone number is 610-660-5585. Thank you.

1

THE EZOLD LAW FIRM, P.C.

Nancy O'Mara Ezold
Christopher E. Ezold*+
Jacqueline M. Woolley*
Michelle D. Patrick ▲
Melanie Bork Graham

ATTORNEYS AT LAW

ONE BELMONT AVENUE, SUITE 501
BALA CYNWYD, PENNSYLVANIA 19004
Phone: (610) 660-5585
Fax: (610) 660-5595
E-mail: Ezoldlaw@Ezoldlaw.com

OF COUNSEL:
Carol L. Hartz*
* Also Admitted in New Jersey
▲ Admitted in New Jersey
+ Also Admitted in Delaware

June 13, 2017
Via Email and US Mail

Thomas D. Paradise, Esq.
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222

Re: Nova Home Health Care, Inc. v. Peter Koutroulis, et al
Docket No.: 160700709

Dear Mr. Paradise:

Per your June 12, 2017 email agreeing to accept service on their behalf, enclosed please find two Subpoenas to Attend and Testify for Mr. Ludwig and Mr. MacDonald.

Very truly yours,

Christopher E. Ezold

/kcf
Enclosures

cc:  Nova Home Health Care, Inc. (via email)
     United Home Health Care, LLC (via US Mail)
     Joseph Cronin, Esquire (via email)



In the matter of:

NOVA HOME HEALTH CARE, INC. VS KOUTROULIS ETAL

Court of Common Pleas

_____ July _____ Term, Yr. 16

No. 00709

# Subpoena

To: Steven K. Ludwig

*(Name of Witness)*          *(Nombre del Testigo)*

1. YOU ARE ORDERED BY THE COURT TO COME TO *(El tribunal le ordena que venga a)*

Courtroom 630, City Hall, , AT PHILADELPHIA, PENNSYLVANIA ON *(En Filadelfia Pensilvania el)* July 20, 2017 , AT *(a las)* 02:00 O'CLOCK P.M., TO TESTIFY ON BEHALF OF *(para atestiguar a favor de)* NOVA HOME HEALTH CARE, INC. IN THE ABOVE CASE, AND TO REMAIN UNTIL EXCUSED *(en el caso arriba mencionado y permanecer hasta que le autoricen irse)*.

2. AND BRING WITH YOU THE FOLLOWING *(Y traer con usted lo siguiente)*:

Please see Addendum "A" attached.

| **Notice** | **Aviso** |
|---|---|
| If you fail to attend or to produce the documents or things required by the subpoena, you may be subject to the sanctions authorized by Rule 234.5 of the Pennsylvania Rules of Civil Procedure, including but not limited to costs, attorney fees and imprisonment. | Si usted falla en comparecer o producir los documentos o cosas requeridas por esta cita, usted estara sujeto a las sanciones autorizadas por la regla 234.5 de las reglas de procedimiento civil de Pensilvania incluyendo pero no limitado a los costos, remuneracion de abogados y encarcelamiento. |

INQUIRIES CONCERNING THIS SUBPOENA SHOULD BE ADDRESSED TO *(Las preguntas que tenga acerca de esta Citacion deben ser dirigidas a)*:

ISSUED BY: Ezold, ChristopherE

*(Attorney)*      *(Abodago/Abogada)*

Address *(Direccion)*: The Ezold Law Firm, P.C.
One Belmont Avenue

Suite 501

Telephone No. *(No. de Telefono)*: 610 660-5585

Attorney ID # *(Abogado ID#)*: 77369

BY THE COURT *(Por El Tribunal)*:
**Eric Feder**
Deputy Court Administrator *(Administrador del Tribunal Adjunto)*
Director, Office of Judicial Records *(Director de la Oficina de Registros Judiciales)*

PRO

*(Clerk)*      *(Escribano)*

You may contact the Office of Judicial Records to verify that this subpoena was issued by the Philadelphia County Court of Common Pleas. Phone: (215) 686-4251 or Email: eCommCertSupport@courts.phila.gov

Christopher E. Ezold, Esq.
I.D. No. 77369
Email: cezold@ezoldlaw.com
Melanie Bork Graham, Esq.
I.D. No. 93746
Email: mgraham@ezoldlaw.com
The Ezold Law Firm, P.C.
One Belmont Avenue, Suite 501
Bala Cynwyd, PA 19004
Tel:    (610) 660-5585
Fax:    (610) 660-5595

**Attorneys for Plaintiff**

| | |
|---|---|
| NOVA HOME HEALTH CARE, INC. | COURT OF COMMON PLEAS |
|        Plaintiff, | PHILADELPHIA COUNTY, |
| | PENNSYLVANIA |
|        v. | TRIAL DIVISION-CIVIL |
| | |
| PETER KOUTROULIS, UNITED | Commerce Program |
| HEALTH CARE, LLC, JOHN/JANE DOE 1, and | May Term, 2016 |
| JOHN/JANE DOE 2 | |
| | NO. 160700709 |
|        Defendants. | |

## ADDENDUM "A"

1. Any and all writings, recordings, voicemails, text messages or other communications regarding whether Peter Koutroulis would provide you authority to settle the instant matter or discussing same, including any documents containing such authority.

2. Any and all writings, recordings, voicemails, text messages or other communications regarding any authority Peter Koutroulis gave you to settle the instant matter, or discussing same, including any documents containing such authority.

2 Any and all writings, recordings, voicemails, text messages or other communications regarding whether you would be provided authority to respond to Mrs. Graham's email of March 23rd to Mr. Ludwig, or discussing same, including any documents containing such authority.

3. Any and all writings, recordings, voicemails, text messages or other communications regarding whether you would be provided authority to send your March 29 email to Mrs. Graham, or discussing same, including any documents containing such authority.

4. Any and all writings, recordings, voicemails, text messages or other communications from Peter Koutroulis providing or discussing provision of authority to settle the instant matter.

5. Any and all writings, recordings, voicemails, text messages or other communications from Peter Koutroulis regarding or discussing whether you would be provided authority to send your March 29 email to Mrs. Graham or the terms and language therein, including any documents containing such authority.



In the matter of:

NOVA HOME HEALTH CARE, INC. VS KOUTROULIS ETAL

Court of Common Pleas

_____ July _____ Term, Yr. _16_

No. __00709__

# Subpoena

To: __Andrew M. MacDonald_____

*(Name of Witness)*                    *(Nombre del Testigo)*

1.   YOU ARE ORDERED BY THE COURT TO COME TO *(El tribunal le ordena que venga a)*

__Courtroom 630, City Hall,_____ , AT PHILADELPHIA, PENNSYLVANIA ON *(En Filadelfia*

*Pensilvania el)* _____July 20, 2017_____ , AT *(a las)* 02:00 O'CLOCK __P__.M.,   TO

TESTIFY ON BEHALF OF *(para atestiguar a favor de)* __NOVA HOME HEALTH CARE, INC._____ IN THE

ABOVE CASE, AND TO REMAIN UNTIL EXCUSED *(en el caso arriba mencionado y permanecer hasta que le autoricen irse)*.

2.   AND BRING WITH YOU THE FOLLOWING *(Y traer con usted lo siguiente)*:

Please see Addendum "A" attached.

| **Notice** | **Aviso** |
|---|---|
| If you fail to attend or to produce the documents or things required by the subpoena, you may be subject to the sanctions authorized by Rule 234.5 of the Pennsylvania Rules of Civil Procedure, including but not limited to costs, attorney fees and imprisonment. | Si usted falla en comparecer o producir los documentos o cosas requeridas por esta cita, usted estara sujeto a las sanciones autorizadas por la regla 234.5 de las reglas de procedimiento civil de Pensilvania incluyendo pero no limitado a los costos, remuneracion de abogados y encarcelamiento. |

INQUIRIES CONCERNING THIS SUBPOENA SHOULD BE ADDRESSED TO *(Las preguntas que tenga acerca de esta Citacion deben ser dirigidas a)*:

ISSUED BY:     Ezold, ChristopherE

*(Attorney)*                    *(Abodago/Abogada)*

Address *(Direccion)*:     The Ezold Law Firm, P.C.
One Belmont Avenue

Suite 501

Telephone No. *(No. de Telefono)*:     610 660-5585

Attorney ID # *(Abogado ID#)*:     77369

BY THE COURT *(Por El Tribunal)*:
**Eric Feder**
Deputy Court Administrator *(Administrador del Tribunal Adjunto)*
Director, Office of Judicial Records *(Director de la Oficina de Registros Judiciales)*

PRO

*(Clerk)*                    *(Escribano)*

You may contact the Office of Judicial Records to verify that this subpoena
was issued by the Philadelphia County Court of Common Pleas.
Phone:   (215) 686-4251   or Email: eCommCertSupport@courts.phila.gov

Christopher E. Ezold, Esq.
I.D. No. 77369
Email: cezold@ezoldlaw.com
Melanie Bork Graham, Esq.
I.D. No. 93746                                    Attorneys for Plaintiff
Email: mgraham@ezoldlaw.com
The Ezold Law Firm, P.C.
One Belmont Avenue, Suite 501
Bala Cynwyd, PA 19004
Tel:    (610) 660-5585
Fax:    (610) 660-5595

---

| NOVA HOME HEALTH CARE, INC. | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY, |
| Plaintiff, | : | PENNSYLVANIA |
| | : | TRIAL DIVISION-CIVIL |
| v. | : | |
| | : | |
| PETER KOUTROULIS, UNITED | : | Commerce Program |
| HEALTH CARE, LLC, JOHN/JANE DOE 1, and | : | May Term, 2016 |
| JOHN/JANE DOE 2 | : | |
| | | NO. 160700709 |
| Defendants. | | |

## ADDENDUM "A"

1. Any and all writings, recordings, voicemails, text messages or other communications regarding whether you would be provided authority from Peter Koutroulis to engage in the telephone conversation you had with Mrs. Graham on March 30th, regarding the March 29th email of Mr. Ludwig and settlement in general, including any documents containing such authority.

2. Any and all writings, recordings, voicemails, text messages or other communications between you and Mr. Ludwig regarding authority to engage in the March 30th telephone conversation with Mrs. Graham.